## MATTER OF ISBER

### In Visa Petition Proceedings

### A-28485883

*Decided by Board August 10, 1993*

Section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (1988), does not preclude approval of a second marital visa petition filed by a petitioner on behalf of the same beneficiary.

ON BEHALF OF PETITIONER:    Albert Armendariz, Sr., Esquire
3431 Pershing Drive, Suite A-4
El Paso, Texas 79903

BY:   Milhollan, Chairman; Dunne, Vacca, and Heilman, Board Members. Concurring Opinion: Morris, Board Member.


The instant case was last before us on December 18, 1991, when we returned the record of proceedings to the Immigration and Naturalization Service because the beneficiary had filed the appeal. On January 6, 1992, the petitioner, through counsel, filed a motion to reconsider in which she indicates that she wishes to pursue the appeal from the denial of her visa petition.[1] *See* 8 C.F.R. § 103.5(a)(3)(i) (1993). In view of the petitioner's stated desire to pursue her appeal, we hereby vacate our prior decision and reinstate the proceedings on appeal. The appeal will be dismissed.

The petitioner is a 24-year-old United States citizen. The beneficiary is a 38-year-old native and citizen of Syria. In a decision dated April 14, 1989, the district director denied the visa petition filed by the petitioner in accordance with section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (1988). The petitioner had sought to accord the beneficiary immediate relative status as her spouse pursuant to section 201(b) of the Act, 8 U.S.C. § 1151(b) (1988). The petitioner filed her most recent visa petition on the beneficiary's behalf

---

[1] The petitioner also requests in her motion that the Board withhold consideration of the beneficiary's appeal in his deportation proceedings pending our issuance of a decision in the instant matter. We note that the Board issued decisions in the beneficiary's deportation proceedings on August 26, 1992, and December 7, 1992, and his case is not currently before the Board.

on March 31, 1989. The petitioner and beneficiary married on November 23, 1988.

The record reflects that the petitioner initially filed an immediate relative visa petition on behalf of the beneficiary on December 1, 1988. She withdrew the petition on January 31, 1989, and indicated in an affidavit that she married the beneficiary as "a favor, so he could get his residency." The petitioner stated further in her sworn statement that she and the beneficiary were living together "so that it would look good," but that they had not consummated the marriage.

In support of her present visa petition, the petitioner submitted a new affidavit in which she attests that she and the beneficiary have "a true marriage based on mutual love and affection." She also states that she was coerced by Service officers to withdraw the petition which she had filed earlier on the beneficiary's behalf. The petitioner further advises in her more recent affidavit that "[f]ixing [the beneficiary's] papers is merely incidental to our desire to live with each other as husband and wife in harmony and in the United States." The petitioner also submitted an affidavit from her mother who indicates that the petitioner and beneficiary's marriage is bona fide, affidavits from friends who attended her wedding reception, as well as evidence of a joint bank account and a joint income tax return.

On appeal, the petitioner contends that the visa petition should be approved because her marriage to the beneficiary is bona fide. The petitioner asserts that her marriage to the beneficiary was not entered into in order to evade the immigration laws, that her sworn statement to that effect was coerced by Service officials when she was not represented by counsel, and that her prior withdrawal of the visa petition does not constitute evidence of a fraudulent marriage.

Section 204(c) was added to the Act on October 3, 1965, by section 4 of Pub. L. No. 89-236, 79 Stat. 911, 915 (1965). It provided as follows:

> Notwithstanding the provisions of subsection (b) ... no petition shall be approved if the alien has previously been accorded a nonquota or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws.

This language was intended to prohibit "approval of a petition for an alien whose *prior marriage* was determined by the Attorney General to have been entered into for the purpose of evading the immigration law." S. Rep. No. 748, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.C.C.A.N. 3328, 3341-42 (emphasis added).

Section 204(c) was amended by section 4(a) of the Immigration Marriage Fraud Amendments of 1986 ("IMFA"), Pub. L. No. 99-639,

100 Stat. 3537, 3543 (1986),[2] in two ways. First, the words "or has sought to be accorded," were added after the words "has previously been accorded." Prior to this amendment, section 204(c) did not apply where the alien had not actually been granted an immigration benefit on the basis of his or her marriage, even though it was indubitably fraudulent and even though the alien had sought to obtain such a benefit. If, for instance, the petitioner withdrew the visa petition on being confronted with evidence that the marriage was a sham, the beneficiary was not thereafter barred from deriving an immigration benefit from another marriage or otherwise. The addition of the words "or has sought to be accorded" closed this loophole. There is nothing in the legislative history, however, which suggests that Congress was not still referring to a "prior marriage." *See* H.R. Rep. No. 906, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 5978.

IMFA also amended section 204(c) to add a new clause prohibiting the approval of a visa petition if "the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 100 Stat. at 3543. Congress thereby extended the perpetual bar of section 204(c) to cases where an alien had entered, or attempted or conspired to enter, into a sham marriage for the purpose of obtaining an immigration benefit, but no benefit was actually sought. Situations such as these could result, for instance, in connection with undercover Service investigations of marriage fraud rings. Again, there was no suggestion that Congress was not still referring to prior marriages.

In the case before us, the district director is seeking to interpret section 204(c) as applying where the marriage on the basis of which an immigration benefit is sought is not a prior marriage, but the same marriage which the petitioner has previously sought (unsuccessfully) to establish as bona fide. While the language of section 204(c) is broad enough to carry this interpretation, it ignores the original legislative history, is not necessary to carry out the purposes of section 204(c), and conflicts with other policies contained in the Act. The clear policy of the Act is to allow United States citizens and lawful permanent residents to be united with their alien spouses where the marriage is bona fide. There are cases in which the petitioner files a visa petition on behalf of a spouse, fails for some reason to establish the bona fides of the marriage, files a second visa petition with additional evidence, and on the second try convinces the Service that the marriage is bona fide. Under the district director's interpretation of section 204(c), the

---

[2] Section 204(c) was also amended by section 9(g) of the Immigration Technical Corrections Act of 1988, Pub. L. No. 100-525, 102 Stat. 2609, 2620 (1988) to change "nonquota" to "immediate relative."

petitioner could never have a second chance to establish the bona fides of the marriage. In those cases where the marriage was in fact bona fide, the spouses would be perpetually barred from being united, contrary to well-established immigration policy of the United States. We accordingly conclude that the district director here erred by denying the visa petition pursuant to section 204(c) of the Act.

Based upon our further review of the record, though, we find that the ultimate decision to deny the visa petition was correct. In *Matter of Laureano*, 19 I&N Dec. 1, 4 (BIA 1983), the Board held that a petitioner who has previously withdrawn a visa petition and admitted that the marriage was not bona fide bears a "heavy burden" of explaining the circumstances surrounding the prior withdrawal. We held further that where a visa petition has once been withdrawn under these circumstances, any subsequently filed visa petition must include: (a) an explanation of the prior withdrawal and (b) evidence supporting the bona fides of the parties' relationship.

The petitioner's admissions when she withdrew her first petition that she married the beneficiary as "a favor" and to help him obtain permanent residence, indicate that the petitioner and beneficiary did not intend to establish a life together as husband and wife when they married. *See Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975); *Matter of McKee*, 17 I&N Dec. 332 (BIA 1980). We are not persuaded by the petitioner's claim on appeal that she executed her sworn statement to Service officers under duress. The petitioner's general claim of duress is insufficient to retract her detailed admissions as to the fraudulent nature of her marriage to the beneficiary. Moreover, the petitioner has not submitted sufficient objective evidence to substantiate her claim that her marriage to the beneficiary is now bona fide; the letters from acquaintances who allegedly attended the marriage ceremony, as well as the statement from the petitioner's mother and the meager historical evidence submitted, are inadequate to meet the petitioner's "heavy burden" of proving that she and the beneficiary are now residing together as husband and wife. *Matter of Laureano, supra; Matter of McKee, supra.*

We therefore conclude that the district director's decision denying this visa petition was ultimately correct, and the petitioner's appeal will therefore be dismissed.

**ORDER:** The appeal is dismissed.

*CONCURRING OPINION:* James P. Morris, Board Member

I respectfully concur.

I agree with the majority in rejecting the petitioner's claim on appeal that she acted under duress when she withdrew her first petition

on behalf of the beneficiary. I also agree that she has not established that her marriage to the beneficiary is now bona fide. However, I am persuaded that approval of the petition would be barred by section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (1988), even if the petitioner could show that her marriage to the beneficiary is now a bona fide relationship.

I would first point out that, contrary to the argument made by the majority, my interpretation of the statute would not preclude parties to a marriage from having a second chance to establish the bona fides of the marriage. They should have every opportunity to prove that the marriage was bona fide at its inception. It is only in circumstances in which the parties engaged in a sham marriage with intent to commit fraud under the immigration laws that the beneficiary would be forever barred by section 204(c) from certain immigration benefits.

Again, contrary to the position taken by the majority, such a result would not be inconsistent with the policy of our immigration laws of uniting spouses. While that policy is well established, the statute itself bars the application of that policy in the case of an alien who has engaged in a sham marriage under the immigration laws. Such an alien is specifically precluded from benefitting even though he may have subsequently entered into a bona fide marital relationship with a United States citizen or lawful permanent resident.

The majority opinion suggests that as a matter of policy an alien who has engaged in a sham marriage should be placed in a more favorable position if he subsequently enters into a bona fide relationship with the same spouse, rather than a different spouse. This strikes me as being a rather odd policy. In each case the beneficiary has engaged in a fraudulent scheme. The offense is complete at the time it is committed. The object of the statute appears to be to punish that offense. It is not altered by the subsequent conduct of entering a bona fide relationship. As a matter of policy, I find less reason to extend benefits to parties to a sham marriage who subsequently enter a bona fide relationship with each other than to those who enter bona fide marriages with other persons. In the latter case only the beneficiary has engaged in the fraudulent scheme. In the former situation both the beneficiary and the petitioner have been involved in the fraud. Logically, there is even less reason to look favorably on such marriages than those in which at least the petitioner is innocent of fraud.

I conclude from the foregoing discussion that policy considerations provide no sound basis to hold that the beneficiary here should not be subject to the provisions of section 204(c). I turn now to consideration of the language of the statute and the effect, if any, of the legislative history.

The majority holds that the language of section 204(c) was intended

to prohibit the approval of a petition only in the case of an alien whose *prior marriage* was determined by the Attorney General to have been entered into for the purpose of evading the immigration laws. The majority acknowledges that the underlined language is not contained in the statute itself and that the language of the statute is broad enough to carry the interpretation that I support. However, the majority relies on language in the legislative history of the statute which refers to a prior marriage.

Language of the statute, itself, is ordinarily conclusive in the absence of clearly expressed legislative intent to the contrary. *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987). The majority has treated the language in the legislative history as being equivalent to language of the statute. It is not. The legislative history can be used only to resolve ambiguities in the statutory language. There are no such ambiguities in section 204(c). Even if one were to find some ambiguity in the language of section 204(c)(1), which refers to an alien having been previously accorded an immigration benefit, section 204(c)(2) contains no such ambiguity. That section bars benefits to an alien if "the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." That language does not contain the word "previously" or any other word that would suggest an intention to restrict the bar under the statute to a prior marriage.

The purpose of considering legislative history obviously is to find the intent of Congress in enacting the statute. The courts have wisely restricted the use of legislative histories to those cases in which the language of the statute is ambiguous and the legislative intent is clear. I have already indicated that I do not find the statute to be ambiguous. Moreover, I find that the language in the legislative history relied upon by the majority falls far short of establishing the clear intent of Congress. While the words "prior marriage" were used, there was no discussion or explanation of that language. Its use appears to be casual. The words could easily have been incorporated in the statute, but they were not. In all likelihood it never occurred to the framers of the statute that some parties might enter into a marriage for the purpose of defrauding the United States but subsequently develop a bona fide marital relationship. Finally, the language cited by the majority could very well be construed as an example of how the statute might apply, i.e., to a prior marriage that was entered into to evade the immigration laws. An example contained in the legislative history is not a definitive interpretation of the scope of a statute and does not suggest a clear congressional intent. *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633 (1990). The legislative history relied upon by the

majority does not establish any congressional intent, much less an intent that is clear enough to restrict the plain language of the statute.

I would hold that the record supports a finding that the parties entered into a sham marriage and that they have not established that their marriage has subsequently become a bona fide one. Further, I would hold that even if they could establish that their marriage is now bona fide, the beneficiary would be barred from the benefits of an approved visa petition under the provisions of section 204(c).