NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  08a0391n.06

Filed:  July 1, 2008

No. 07-1569

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| MARIO SARDO, | ) |
| | ) |
| Petitioner/Appellant | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF MICHIGAN, |
| DEPARTMENT OF HOMELAND | ) SOUTHERN DIVISION |
| SECURITY, UNITED STATES | ) |
| CITIZENSHIP AND IMMIGRATION | ) |
| SERVICES | ) |
| | |
| Respondent/Appellee | |

Before:  BATCHELDER, SUTTON, and FRIEDMAN,* Circuit Judges.

FRIEDMAN, Circuit Judge.  This appeal contests the United States District Court for the

Eastern District of Michigan's denial of an attorney fee under the Equal Access to Justice Act

("Justice Act"), 28 U.S.C. § 2412(d), following the appellant, Mario Sardo's, successful district court

challenge to the government's administrative rejection of his petition for naturalization.  The district

---

*  Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

court so ruled because it found that the government's position in the case was substantially justified

– a determination that precludes the award of an attorney fee under the Justice Act.  We affirm.

I.

Sardo entered the United States as an eleven year-old in 1955.  At age twenty-one, he was arrested for aggravated assault, following a police automobile chase that ended in an accident in which he was thrown through the windshield of the automobile in which he was riding.  He spent at least two nights in jail, pleaded guilty to the offense, and was fined and placed on probation.

At age twenty-two he was arrested for statutory rape.  He pleaded guilty to and was convicted of disorderly conduct and was fined.

In 2003, at age fifty-nine, Sardo (who in the interval apparently had become a successful businessman, employing thirty people) applied for naturalization.  In the printed "Application for Naturalization" form that he submitted, he checked the "No" box after the following questions:

> Have you **EVER** been arrested, cited, or detained by any law enforcement officer (including INS and military officers) for any reason?
>
> Have you **EVER** been charged with committing any crime or offense?
>
> Have you **EVER** been convicted of a crime or offense?
>
> Have you **EVER** received a suspended sentence, been placed on probation, or been paroled?
>
> Have you **EVER** been in jail or prison?

In signing the application, he "certif[ied] under penalty of perjury under the laws of the United States of America," that the foregoing statements "are true and correct to the best of my knowledge and belief."

In a sworn statement during an interview with an Immigration and Naturalization Service Officer "to establish [his] eligibility for US Citizenship," he again answered "No" to the question whether he "had ever been 'arrested, detained cited or handcuffed by law enforcement.'" He also "freely of my own will declare[d] under oath to a federal officer of the United States Bureau of Immigration Services that in no time in my life have I ever been arrested, charged, cited, detained or convicted of any crime, anywhere, at any time in my life. I make this statement of my own free will."

The Immigration Officer denied Sardo's application for naturalization. He ruled that the foregoing quoted statements were "indeed false and misleading testimony in that you concealed the true facts of your past criminal history from the interviewing officer," i.e., that Sardo had "been arrested, charged and convicted, once in 1963 in Royal Oak MI, when you were found guilty of aggravated assault, and a second time in Hazel Park MI in 1965, when you were found guilty of disorderly conduct, a conviction reduced from a charge of statutory rape." The officer concluded: "For this reason you are unable to establish that you are a person of good moral character, an element necessary to achieve citizenship. For this reason your Application for Naturalization must be, and is hereby, denied."

Sardo requested a hearing on that decision. In his request he stated that "[h]is 2 convictions are approximately 40 years old. Petitioner was a youth at the time and can not recall what happened. None of them were murder or could be considered [an] aggravated felony (prior to Nov. 29, 1990). He has been 'clean' for the last 39 years and also during 5 year statutory period. Thus, he should be allowed to proceed to citizenship."

The government refused to change its decision. It stated that Sardo "falsified testimony because [he] orally did not reveal both of [his] arrests to the Service officer during [his] naturalization interview and also in a written sworn statement. [He was] given ample opportunities to reveal [his] criminal history at the time [he] filed for naturalization and during [his] naturalization interview."

Sardo challenged the denial of naturalization by filing a petition for a de novo hearing in the district court pursuant to 8 U.S.C. § 1421(c). In an affidavit Sardo stated that "[w]hen I filed my application for naturalization and during my first interview with the immigration officer, I had no recollection of two incidences that happened in 1963 and 1965 during my youth life and accordingly I stated to the officer what I recalled to the best of my ability at the time." He further stated: "I did not intend to lie or provide any false testimony. I answered to the officer the facts as I recalled at the time."

After a hearing, the district court granted naturalization. The court explained: "it's my view that Mr. Sardo made, quote, a false statement, but did not lie. And therefore - - and from Mr.

Coleman [the Immigration Officer]'s perspective, they both look the same. There is no way, Mr.

Coleman, you could read a mind. But on review, it seems to me that Mr. Sardo did have a faulty

memory and, as a finding of fact, he did not deliberately intend to deceive the agency and, therefore,

is eligible for naturalization."

Sardo then applied to the district court for an attorney fee under the Justice Act. The district

court denied the application. It ruled that "the government's position of defending the INS Officer's

denial of Mr. Sardo's naturalization application was 'substantially justified.'" The court explained:

> The INS Officer based his decision on the application filed by Mr. Sardo as well as Mr. Sardo's answers during his INS interview. As the Court noted when it ruled from the bench, from the INS Officer's perspective a lie and a false statement could not be differentiated. The INS Officer's decision was reasonable and the Government's position to defend his decision was reasonable in both law and fact. Thus, the Government was substantially justified in defending the denial of Mr. Sardo's naturalization application and attorneys fees and costs shall not be awarded.

II

The Justice Act directs a court to award an attorney fee to "a prevailing [non-government]

party" in any suit by or against the United States "unless the court finds that the position of the

United States was substantially justified . . . ." 28 U.S.C. § 2412(d)(1)(A). The government's

position is "substantially justified" if it is "'justified in substance or in the main' - that is, justified

to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis

both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts

of Appeals that have addressed this issue." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see*

*also*, *Jankovich v. Bowen*, 868 F.2d 867, 869 (6th Cir. 1989) ("[T]he proper standard in EAJA cases is whether the Government's position was justified, both in fact and in law, to a degree that could satisfy a reasonable person."). We review the district court's "substantially-justified" ruling under an abuse-of-discretion standard. *Pierce*, 487 U.S. at 558-563; *see also*, *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 506 (6th Cir. 1998) (citing *Pierce*).

To be naturalized, the applicant must be "a person of good moral character." 8 U.S.C. § 1427. One "who has given false testimony for the purpose of obtaining any benefits under this chapter," which include naturalization, cannot be found to be "of good moral character." 8 U.S.C. § 1101(f)(6). Thus, if Sardo gave "false testimony" about his criminal record, he was ineligible for naturalization.

Under our "deferential review of a district court's decision regarding attorney's fees under the EAJA [,] "*Pierce*, 487 U.S. at 565, we conclude that the district court did not abuse its discretion in finding that the government was "substantially justified" in denying Sardo's petition for naturalization and defending that ruling in the ensuing litigation. The government's actions would have satisfied a reasonable person as justified both in fact and in law.

They were justified in fact because Sardo unquestionably made numerous false statements about his prior criminal record in both his written application for naturalization and his sworn statement before the Immigration Officer. In the former document he made five false statements; in the latter he made false statements about various aspects of his criminal conduct.

In his administrative appeal the only justification or excuse Sardo offered for his false statements was that the events he concealed all happened a long time ago, when he was a "youth," and that he did not "recall what happened." His alleged memory lapses did not justify his misstatements or require the government to overlook or forgive them. The naturalization form framed the questions to which he gave false answers in terms of whether he had "EVER" (capitalized in the form) been subjected to the specified conduct. His sworn statement to the Immigration Officer included the declaration that "in no time in my life" had he "ever been" arrested, convicted, etc.

Sardo's apparent culpability for concealing his criminal record is underscored by his district court testimony that he had an employee (who was unaware of his prior criminal record) fill out the naturalization application form, that "he filled out the papers. He told me to sign them, and I signed them . . . . [H]e gives me a lot of papers to sign, and I sign them. I don't even look at them." In response to the question "Did you go through the entire application before signing it?" he answered "No, I didn't." He "signed it without looking at it." The first time he had "looked at" the application form had been "just now" at the hearing.

The government's actions were justified in law because a reasonable person could have concluded that Sardo's concealment of his prior arrests, convictions, and other involvement with the criminal justice system reflected a sufficient lack of good moral character to justify denying him naturalization. Although the district court ultimately concluded that Sardo had memory problems and did not intend to deceive the government by his false statements, the court itself recognized that

the government had acted reasonably in continuing to oppose Sardo's naturalization during the administrative and judicial proceedings.

Sardo contends that the government's position was not substantially justified because the government allegedly violated a regulation under which, before the government denied his application, he should have been informed of and permitted to examine the government's material showing Sardo's arrests and convictions. Assuming without deciding that the government's violation of such a regulation could undermine a claim of substantial justification, the regulation upon which Sardo relies does not apply to this case.

The regulation, 8 C.F.R. § 103.2(b)(16), provides in pertinent part:

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered.

This provision requires disclosure only of information of which the applicant "is unaware." The regulation is directed to adverse information that the applicant does not know about - - usually from a third person - - not to such information that the applicant simply has forgotten. The government cannot be faulted for failing to disclose to Sardo the information it had about his prior criminal record before it initially denied him naturalization.

We have considered, but find unpersuasive, Sardo's other arguments, which do not warrant discussion.

The order of the district court denying Sardo attorney fees is affirmed.