# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-10520
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2014

Lyle W. Cayce
Clerk

TRAVISHA MANGWIRO; TINASHE MANGWIRO,

Plaintiffs–Appellants,

v.

JEH CHARLES JOHNSON, SECRETARY, DEPARTMENT OF HOMELAND
SECURITY; ALEJANDRO MAYORKAS, Director of United States Citizenship
and Immigration Services; TRACY TARANGO, Field Office Director for Dallas
District Office,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-1903

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Travisha Mangwiro and Tinashe Mangwiro (the Mangwiros) appeal the district court's dismissal of their complaint for failure to state a cause of action. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10520

I

Accepting as true the factual allegations contained in the Mangwiros' complaint,[1] the facts are as follows. Travisha Mangwiro, a citizen of the United States, married Tinashe Mangwiro, a citizen of Zimbabwe, on August 22, 2007. The following year Mrs. Mangwiro filed a Form I-130 with the United States Citizenship and Immigration Service (USCIS) pursuant to 8 U.S.C. § 1154(a)(1)(A)(i) and 8 C.F.R. § 204.1(a)(1) to have her husband classified as an immediate relative (the Form I-130 petition).[2] Such a classification would have allowed Mr. Mangwiro to become an alien lawfully admitted to the United States for permanent residency.[3] USCIS thereupon interviewed the Mangwiros separately in order to determine whether they had entered into the marriage for the purposes of evading the immigration laws. After finding discrepancies and inconsistencies in the Mangwiros' answers, USCIS issued to Mrs. Mangwiro a Notice of Intent to Deny (NOID) her petition. Following the Mangwiros' response to the NOID, USCIS denied the petition, citing § 204(c) of the Immigration and Nationality Act (INA).

In 2010, Mrs. Mangwiro again petitioned the USCIS to have her husband recognized as an immediate relative. Following separate interviews, USCIS issued another NOID alleging discrepancies and inconsistencies. After the Mangwiros responded, USCIS again denied the petition, citing § 204(c). Thereafter, the Mangwiros' appealed to the Board of Immigration Appeals

---

[1] *See Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2] Mr. Mangwiro simultaneously filed a Form I-485, Application to Register Permanent Residence or Adjust Status. The Mangwiros do not challenge USCIS's denial of that petition and, in any event, such denials are not reviewable. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 277 (5th Cir. 2008).

[3] *See* 8 U.S.C. § 1151(b)(2)(A)(i); *see also Bolvito v. Mukasey*, 527 F.3d 428, 430 (5th Cir. 2008) ("Immediate relatives of a United States citizen, defined as the children and spouse of a citizen . . . may immigrate to the United States without regard to any quota system or waiting period.") (internal quotation marks omitted).

No. 13-10520

(BIA).  The BIA dismissed the appeal based on a finding that the Mangwiros had failed to prove the bona fides of the marriage.

The Mangwiros then filed suit in federal district court.  Their complaint contained two causes of action.  First, they asserted that USCIS violated the Administrative Procedure Act (APA) by misinterpreting § 204 of the INA.  Second, they claimed that USCIS violated their due process rights by refusing to provide them with recordings of their interviews.  The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that the Mangwiros had failed to state a claim for which relief could be granted.  This appeal followed.

## II

We review de novo a district court's dismissal of a complaint for failure to state a claim, using the same standard as the district court.[4]  That standard requires the plaintiff to plead sufficient facts "to state a claim to relief that is plausible on its face."[5]  "A plaintiff meets this standard when it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[6] In engaging in our review, we "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[7]

This case requires us to review USCIS's denial of a visa application.  Although we generally lack jurisdiction to review immigration decisions statutorily committed to the discretion of the Attorney General and the

---

[4] *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 217 (5th Cir. 2009).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6] *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 504 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[7] *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008).

No. 13-10520

Secretary of Homeland Security,[8] we have previously held that "[d]eterminations regarding the validity of marriage for I-130 petition purposes are . . . subject to review by courts."[9]  However, "[i]t is well settled that the applicant for a visa bears the burden of establishing eligibility."[10]  Moreover, USCIS's denial of a visa application "may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[11]

### III

The first cause of action in the Mangwiros' complaint asserted that USCIS violated the APA by misapplying § 204(c) of the INA.  Codified at 8 U.S.C. § 1154(c), that provision prohibits the Attorney General from granting a Form I-130 petition if:

> (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.[12]

The Mangwiros contended that this provision could not form the basis for a denial of their petitions because it "require[s] a <u>previous</u> finding of marriage fraud in order for a <u>subsequent</u> I-130 petition to be denied."  Since the

---

[8] *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

[9] *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008).

[10] *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989).

[11] *Id.* (citing 5 U.S.C. § 706(2)(A)).

[12] 8 U.S.C. § 1154(c).

4

No. 13-10520

Mangwiros have each only been married once, USCIS could not have made a previous finding of marriage fraud (at least in their initial application).[13]

The district court held that this cause of action failed to state a claim for which relief could be granted. Although it agreed that subsection (1) only applied if the alien had filed a previous petition, it held that the plain language of subsection (2) made clear that it applied any time the Attorney General determined that the petitioner had attempted or conspired to enter into a marriage for the purposes of evading the immigration laws, irrespective of whether that attempt was a prior petition or the present one. It noted, moreover, that to interpret subsection (2) as the Mangwiros urged would make it duplicative of subsection (1).

On appeal, the Mangwiros argue that the district court erred because both the text of § 204(c) and the provision's legislative history make clear that its reach is limited to previous marriages. Further, they contend that the BIA and USCIS have adopted this understanding in their decisions and regulations.

We agree with the district court that the plain language of § 204(c)(2) makes clear that it applies to both the current and previous petitions. There is nothing in the language of subsection (2) to indicate that its scope is limited to previous petitions. The subsection employs the present perfect tense. "This tense indicates action that was started in the past and has recently been

---

[13] On appeal, the Mangwiros offer a slightly different interpretation of § 204(c). They contend that it only mandates a denial of an I-130 application if the government finds that the alien entered into a previous *marriage* in order to evade the immigration laws. This interpretation fails for the same reasons as their originally proposed understanding and is in any event waived. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 478-79 (5th Cir. 2002) (holding that allegation "not alleged in the complaint and . . . first raised on appeal" was "not an argument that we will not entertain").

completed or is continuing up to the present time."[14]   Thus, if an individual says, "I have conspired to evade the immigration laws," he could be saying that he previously entered into a sham marriage; or he could be saying that he is currently in the process of petitioning the government for a change in immigration status on the grounds of a fraudulent marriage.  Congress would not rely merely upon the use of "has" to limit the application of subsection (2) to previous petitions.  Moreover, the rest of the statute indicates that Congress knew how to limit this section to prior activity.  In subsection (1), for instance, Congress specifically provides that the Attorney General shall deny an application if he determines that the applicant "has *previously* been accorded" an immigration preference on the basis of a sham marriage.[15]  If Congress had intended to limit the application of subsection (2) to prior petitions, it would have employed similar language.

This understanding is confirmed by the interrelation of subsections (1) and (2).  Were the application of subsection (2) limited to previous petitions, the two subsections would be largely, if not entirely, duplicative.[16]   The language of subsection (1) requires the Attorney General to deny an application if the alien has previously sought to be accorded immediate relative status by entering into a sham marriage.  The only way in which subsection (2) has meaning is if it encompasses not only individuals who engaged in such previous attempts, but also those who are presently attempting to evade the immigration laws.

---

[14] WILLIAM A. SABIN, THE GREGG REFERENCE MANUAL ¶ 1033 (7th ed. 1994).

[15] 8 U.S.C. § 1154(c) (emphasis added).

[16] *See White v. Black*, 190 F.3d 366, 368 (5th Cir. 1999) ("The canons of statutory construction dictate that when construing a statute, the court should . . . not render as meaningless the language of the statute.").

No. 13-10520

The Mangwiros contend that subsection (2) could have independent meaning under their interpretation as well. They argue that subsection (1) only includes instances in which a petition is actually filed and that subsection (2) covers "all other instances in which an alien has attempted or conspired to enter into a fraudulent marriage." But this understanding lacks support in the text. Subsection (1) requires a petition's denial if the alien has previously "sought" to be accorded a preferential immigration status. To seek means "[t]o try to obtain"[17] and thus is not limited to instances in which the alien actually files a petition. Moreover, as the Mangwiros admit, using a separate subsection would be a cumbersome manner for Congress to cover merely those prior attempts and conspiracies that did not result in actual petitions.

The other assertions put forward by the Mangwiros do not mandate a contrary result. They claim that § 204(c) only applies to previous attempts because it employs a different article from that used in § 204(b). The latter provision states that the Attorney General shall grant the Form I-130 petition "if he determines that the facts stated in *the* petition are true," while § 204(c)(2) provides that the Attorney General shall deny the petition if he determines that the "alien has attempted or conspired to enter into *a* marriage" to evade the immigration laws.[18] The Mangwiros claim that the use of "a" "clearly indicates a marriage which happened previously." This argument is without merit. Although § 204(b)'s use of "the" makes clear that that provision only applies to the specific petition under consideration, the use of "a" in the context of § 204(c) means "[a]ny,"[19] including the current petition.

---

[17] WEBSTER'S II NEW COLLEGE DICTIONARY 1023 (3d ed. 2005).

[18] 8 U.S.C. § 1154 (emphasis added).

[19] *See* WEBSTER'S II NEW COLLEGE DICTIONARY 1 (3d ed. 2005).

7

No. 13-10520

Since the intent of Congress is thus clear based on the ordinary tools of statutory construction, we must give effect to that intent, irrespective of any contrary interpretations by the agency.[20]  But even if § 204(c) were ambiguous, that would be of no aid to the Mangwiros, since the agency has not clearly interpreted the provision to apply only to previous petitions.

In support of their view that the BIA and USCIS have interpreted § 204(c) to apply only to previous petitions, the Mangwiros point to a decision of the BIA and to the regulation implementing § 204(c).  Neither, however, interprets § 204(c) to apply only to previous petitions.  In *Isber*,[21] the BIA agreed that the language of § 204(c) was sufficiently broad to require the denial of a petition if the government had previously determined that the alien entered into her current marriage to evade the immigration laws.[22] Nonetheless, in view of the purposes of that provision, it stated that it should not be interpreted in this manner.[23]  This statement was mere dicta, however, since the BIA ultimately determined that the petitioner had adduced insufficient evidence to show that her marriage was bona fide.[24]

The regulation the Mangwiros cite provides that, in order for USCIS to deny a Form I-130 petition on the basis of § 204(c), "the evidence of the attempt or conspiracy must be contained in the alien's file."[25]  The Mangwiros assert that "[o]bviously, if this section applied to the current I-130 petition being adjudicated there would be no need to reference evidence that must be

---

[20] *City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1868 (2013) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984)).

[21] 20 I. & N. Dec. 676 (BIA 1993).

[22] *Isber*, 20 I. & N. Dec. at 678.

[23] *Id.* at 678-79.

[24] *Id.* at 679.

[25] 8 C.F.R. § 204.2(a)(1)(ii).

No. 13-10520

'contained in the alien's file.'" Such is not "obviously" the case. There is no reason why USCIS would be unable to have information in the alien's file about the current petition. Moreover, in numerous other matters, both the BIA and USCIS have understood § 204(c) to apply to the current petition, understandings which we have consistently affirmed, albeit in unreported opinions.[26] We therefore conclude that the district court did not err in holding that the Mangwiros first cause of action failed to state a claim for which relief could be granted.

## IV

The Mangwiros' second cause of action asserted that they were denied due process because USCIS refused their "repeated requests to be provided with copies of their I-130 interview recordings." Without access to these recordings, they argue, they were unable to confirm that there were actual discrepancies between their answers. The district court also held that this cause of action failed to state a claim. It held that the regulations governing Form I-130 petitions and any due process rights guaranteed under the Fifth Amendment required only that the Mangwiros be given notice of the derogatory information relied upon by the USCIS to deny their claims as well as an opportunity to rebut that information. Since the NOIDs provided to the Mangwiros included the discrepancies that formed the basis of the USCIS's denial of their petition, the court concluded, the Mangwiros were not denied due process.

---

[26] *See, e.g.*, *Brown v. Napolitano*, 391 F. App'x 346, 351 (5th Cir. 2010) ("The USCIS must deny a petition if it determines that a marriage is fraudulent.") (citing 8 U.S.C. § 1154(c)(2)); *Kashem v. Holder*, 351 F. App'x 912, 916 (5th Cir. 2009) ("An I-130 visa petition cannot be approved if the marriage supporting the petition was entered for the purpose of evading the immigration laws.") (citing 8 U.S.C. § 1154(c)).

No. 13-10520

The Mangwiros contend that the district court erred because 8 C.F.R. § 103.2(b)(16) requires that they be furnished with the actual documents that formed the basis for the USCIS's decision.[27]  That regulation states:

> An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.
>
> (i) Derogatory information unknown to petitioner or applicant.  If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information . . . .
>
> (ii) Determination of statutory eligibility.  A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner . . . .[28]

According to the Mangwiros, the language of this regulation requires USCIS to provide petitioners with all of the evidence and documentation that forms the basis of a denial.

We disagree.  The plain language of § 103.2(b)(16)(i) requires that USCIS "advise[]" the petitioners whose claims are about to be denied of the "derogatory information" that forms the basis for the denial.  As many of our sister circuits have recognized, it does not require USCIS to provide documentary evidence of the information, but only sufficient information to allow the petitioners to rebut the allegations.[29]  Moreover, as the Mangwiros

---

[27] The Mangwiros do not assert on appeal that the failure to provide them with the recordings denied them their due process rights under the Fifth Amendment.

[28] 8 C.F.R. § 103.2(b)(16).

[29] *Diaz v. U.S. Citizenship & Immigration Servs.*, 499 F. App'x 853, 855-56 (11th Cir. 2012) ("The USCIS complied with [§ 103.2(b)(16)(i)] by issuing Diaz's first wife the notice of intent to deny that indicated that her petition would be denied based on the discrepancies at

No. 13-10520

concede, the agency has interpreted § 103.2(b)(16)(i) as "only require[ing] that a petitioner be advised of the derogatory evidence of record; the regulations do not place upon USCIS a requirement that the actual documents be provided to a petitioner."[30] "When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation."[31] Thus, the district court did not err in denying their claim that USCIS violated their due process rights.[32]

## V

In addition to challenging the reasons the district court gave for dismissing the complaint, the Mangwiros assert on appeal that the BIA failed to consider issues they raised in the appeal of the denial of their second petition. The Mangwiros did not assert any cause of action based on this failure in their complaint, however. As mentioned, they only alleged two causes of action, (1) that USCIS violated the APA by misinterpreting § 204(c) and (2) that USCIS denied them due process. The district court therefore had

---

the interview, and specifically gave her the opportunity to provide rebuttal evidence and explain the discrepancies."); *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009) (holding that "the regulation does not require USCIS to provide, in painstaking detail, the evidence of fraud it finds" and that a NOID meets the requirements of § 103.2(b)(16) when it provides enough information to allow the petitioners to "rebut the evidence"); *see also Sardo v. Dep't of Homeland Sec.*, 284 F. App'x 262, 266 (6th Cir. 2008) (holding that § 103.2(b)(16) did not require the government to allow petitioner to "examine the government's material showing Sardo's arrests and convictions" because the "provision requires disclosure only of information of which the applicant 'is unaware'" and does not require disclosure of "information that the applicant simply has forgotten").

[30] *Liedtke*, No. A070 656 080, 2009 WL 5548116, at *2 (BIA Dec. 31, 2009).

[31] *See Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (internal quotation marks omitted).

[32] The Mangwiros also contend in their brief that that § 555(c) of the APA requires an administrative agency to furnish any documents provided by an individual who appears before it. As they did not raise this argument below, it is waived. *See Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 n.1 (5th Cir. 1990) (although an appellant may "urg[e] that the grounds given by the district court for dismissing her complaint are wrong," she "may not, of course, raise an issue which was not considered by the court below").

11

No. 13-10520

no opportunity to consider the merits of this allegation and whether it stated a cause of action under the Federal Rules of Civil Procedure.[33] It is well settled that "we do not consider issues on appeal that were not presented and argued before the lower court."[34] Thus, we may not examine this final argument.

\*     \*     \*

For the foregoing reasons, we AFFIRM the decision of the district court.

---

[33] The district court did deny the Mangwiros' motion to supplement their complaint with causes of action based on a third petition, but the Mangwiros do not appeal that decision.

[34] *New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013).