**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 27, 2011

Lyle W. Cayce
Clerk

No. 10-60844

_____

GULF COAST HOTEL-MOTEL ASSOCIATION AND ITS SUCCESSOR
MISSISSIPPI HOTEL & LODGING ASSOCIATION,

                                        Plaintiff-Appellant,

v.


MISSISSIPPI GULF COAST GOLF COURSE ASSOCIATION; GULF HILLS
GOLF CLUB, INCORPORATED; GREAT SOUTHERN GOLF CLUB,
INCORPORATED; THE PASS CHRISTIAN ISLES GOLF CLUB,
INCORPORATED; SUNKIST COUNTRY CLUB, INCORPORATED; SPE GO
HOLDINGS, INCORPORATED, doing business as Great Oaks Golf, a wholly
owned subsidiary of Textron Financial Corporation; DOGWOOD HILLS
GOLF COURSE, INCORPORATED; PACIFIC LIFE INSURANCE
COMPANY, doing business as The Oaks Golf Club,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____


Before WIENER, CLEMENT, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

        This is an antitrust case involving a dispute between competing programs
to sell vouchers for rounds of golf at golf courses along Mississippi's Gulf Coast.

10-60844

The district court granted defendants-appellees motion to dismiss, deciding, in pertinent part, that the plaintiff-appellant had failed to allege the interstate commerce element of a valid claim under the Sherman Act. We now REVERSE and REMAND for further proceedings consistent with this opinion.

## I.

The plaintiff-appellant, the Gulf Coast Hotel-Motel Association and its successor Mississippi Hotel & Lodging Association (the "Hotel Association") is a trade association made up of hotels, motels, other lodging members, and golf courses. As one of its services, the Hotel Association provides a golf voucher program for golf course members of the Hotel Association. Through the program, individual golfers buy vouchers for rounds of golf from hotels or from companies that package golf tours. After the golfer turns in the voucher to the golf course and plays his or her round of golf, the golf course presents the validated voucher to the Hotel Association for payment. The Hotel Association collects the payment from the hotel or golf tour packager, and sends the money to the golf course. The Hotel Association keeps $1 per round of golf as an administrative fee. Thus, the Hotel Association's role is essentially to act as an administrative middle-man for the voucher program.

The complaint alleges in three separate paragraphs that golfers who buy the vouchers come to Mississippi from out-of-state:

> The Golf Package Contracts require, in short, that the Hotel Association member golf courses honor the Hotel Association Golf Package Program tickets (i.e., vouchers) presented to them by the patrons of the Hotel Association Lodgings/Golf Packagers for the reserved tee times, in lieu of payment of green and cart fees. These patrons and customers are comprised of *out-of-state persons* visiting

the Mississippi Gulf Coast participating in the voucher program. (emphasis added).

Thus, the Defendant Golf Courses offer higher priced golf rounds to the Hotel Association voucher program, while offering lower rates to the Golf Association voucher program. The Defendant Golf Courses comprise a significant number of courses that are used by *out-of-state visitors* to the Mississippi Gulf Coast. The Defendant Golf Courses' and the Golf Association's concerted efforts to monopolize the golf package market on the Mississippi Gulf Coast by offering higher rounds to programs other than the Golf Association's program, specifically the Hotel Association's program. (emphasis added).

The Hotel Association and the Golf Association directly compete with each other through their golf package voucher program. The voucher programs of both associations service the region of the Mississippi Gulf Coast. The patrons and consumers who use and purchase the vouchers are comprised of *out-of-state residents* who visit the Mississippi Gulf Coast. (emphasis added).

The complaint also alleges, without further elaboration, that the voucher program affects interstate commerce.

The defendants-appellees, the Mississippi Gulf Coast Golf Course Association and a number of Mississippi Gulf golf courses (together, the "Golf Association"), are part of a competing voucher program. The Golf Association includes fifteen golf courses on Mississippi's Gulf Coast. Some of those courses were, as of 2002, also members of the Hotel Association's voucher program. In that year, the complaint alleges that the defendant golf courses threatened to withdraw from the Hotel Association's program unless the Hotel Association excluded non-Golf Association golf courses. The Hotel Association refused. In response, the golf course defendants allegedly agreed to an exclusive agreement

10-60844

to work only with the Golf Association voucher program. That exclusive agreement was enjoined as void and unenforceable by the Harris County Chancery Court in 2003. The complaint alleges that in response, the Golf Association and the defendant golf courses began acting in concert to prevent hotels from using the Hotel Association voucher program by providing the Hotel Association with higher quotes than provided to the Golf Association voucher program. Thus, according to the complaint, a golfer looking to buy a voucher for a round of golf on a course that is a member of both the Golf Association and the Hotel Association can buy that voucher for substantially less money from the Golf Association than the Hotel Association.

The Hotel Association filed suit alleging that the Golf Association's decision to discriminate against the Hotel Association voucher program violated sections 1 and 2 of the Sherman Act, section 2 of the Clayton Act, and constituted various state law torts including tortious interference with business relations and contract. The Hotel Association asserted that the District Court had subject matter jurisdiction over its federal antitrust claims pursuant to 15 U.S.C. § 15(a) and 28 U.S.C. § 1331, and supplemental jurisdiction over its state law claims pursuant to 28 U.S.C. § 1367.

The district court advised the Hotel Association that the complaint failed to articulate sufficient factual allegations establishing any affect on interstate commerce. In response, the Hotel Association filed a First Amended Complaint and a Second Amended Complaint (the complaint at issue here). The Golf Association filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

10-60844

The district court granted the motion, determining that it lacked subject matter jurisdiction over the Hotel Association's Sherman Act claims. The district court stated that federal subject matter jurisdiction under the Sherman Act and the Clayton Act requires "a showing of some nexus between Defendants' conduct and interstate commerce." *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, No. 1:08-CV-1430, 2010 WL 3168032, at *3 (S.D. Miss. Aug. 10, 2010). The district court first rejected the argument that the voucher sales were directly in interstate commerce.[1] Therefore, the district court went on to consider whether the Hotel Association had properly pleaded a substantial affect on interstate commerce for the purposes of Sherman Act jurisdiction. The district court concluded that the Hotel Association's claims were insufficiently detailed, and therefore dismissed those claims with prejudice. Finally, the district court exercised its discretion to dismiss the Hotel Association's state law claims without prejudice, declining to exercise supplemental jurisdiction over Hotel Association's remaining state law claims. The Hotel Association moved for reconsideration, relying primarily on *Cowan v. Corley*, 814 F.2d 223 (5th Cir. 1987)—a case in which this court reinstated a complaint alleging a Sherman Act claim arising out of a business providing a wrecker service on two major federal highways. *Id.* at 225. The district court denied the motion for reconsideration. The Hotel Association timely appealed.

## II.

The Hotel Association asserts that the district court erred in finding that it lacked subject matter jurisdiction over the Hotel Association's Sherman Act

---

[1] The Hotel Association does not appeal the district court's Clayton Act decision. Arguments not briefed on appeal are waived. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

claims. The Hotel Association's position is that its complaint pleaded a sufficient connection to interstate commerce to survive a motion to dismiss. The Golf Association contends in response that the complaint fails because the complaint's "conclusory allegations" did not "sufficiently allege how the Hotel Association's antitrust claims involved interstate commerce."

This court reviews a decision to dismiss for lack of subject matter jurisdiction de novo, applying the same standards as the district court. *See Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725 (5th Cir. 2011). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rule 8 does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation omitted). A plaintiff meets this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

A complaint alleging a Sherman Act claim must allege some nexus between the defendants' conduct and interstate commerce. *See* 15 U.S.C. §§ 1, 3, 13; *see also Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 324-25 (1991). In interpreting that "expansive" standard, however, we must keep in mind "that when Congress passed the Sherman Act, it 'left no area of its constitutional power [over commerce] unoccupied.'" *Summit Health, Ltd.*, 500 U.S. at 329 n.10 *quoting United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 298 (1945)

(alteration in original). Thus, the reach of the act is coextensive with the reach of congressional power under the Commerce Clause of the Constitution. *Id.* at 500 U.S. at 328-29. The Supreme Court has broadly interpreted Congress's authority under the Commerce Clause with respect to economic transactions. *See, e.g, Gonzales v. Raich*, 545 U.S. 1, 32 (2005) (upholding restrictions on the "intrastate, noncommercial cultivation, possession and use of marijuana" under Congress's commerce clause power); *Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942) (establishing Congress's power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce). However, the Court has limited the reach of the Commerce Clause with respect to non-economic activity. *See United States v. Lopez*, 514 U.S. 549, 567 (1995) (holding that a law making it a federal offense to knowingly possess a firearm in a school zone exceeded Congress's commerce clause authority); *United States v. Morrison*, 529 U.S. 598, 610, 617 (2000) (holding that a law providing a federal civil remedy for victims of gender-motivated violence is unconstitutional in part because the law did not concern economic activity). We do not need to determine the limits of Congress's Commerce Clause authority in this case in order to decide that the conduct alleged here—that is, bringing out-of-state tourists to hotels to play golf—falls squarely within the Supreme Court's Commerce Clause jurisprudence.[2]

Indeed, subject matter jurisdiction based on the Commerce Clause "has, of course, long been interpreted to extend beyond activities actually *in* interstate

---

[2] As the Court explained in *Lopez* itself, "inns and hotels catering to interstate guests" are one of the categories of interstate commerce. 514 U.S. at 559; *See also Morrison*, 529 U.S. at 609 (observing that even intrastate economic activity is within Congress's commerce clause power where it substantially affects interstate commerce).

commerce to reach other activities that, while wholly local in nature, nevertheless substantially *affect* interstate commerce." *Cowan*, 814 F.2d at 226. Jurisdiction is not "defeated in a case relying on anticompetitive effects by plaintiff's failure to quantify the adverse impact of defendant's conduct." *McLain*, 444 U.S. at 243. Rather, the issue is whether, "as a matter of practical economics," the complaint is sufficient to allege an affect on interstate commerce. *Hosp. Bldg. Co. v. Trs. of Rex Hos.*, 425 U.S. 738, 745 (1976). The Supreme Court has explained that courts should exercise caution in dismissing antitrust claims. *Id.* at 746; *see also Twombly*, 550 U.S. at 558 (contrasting due caution in dismissing an antitrust complaint with failing to insist upon some specificity in pleading).

The Supreme Court's opinion in *Summit Health* is instructive. There, an ophthalmologist claimed that a conspiracy to drive him out of business by instituting fraudulent "peer review" proceedings against him violated the Sherman Act. *Id.* at 324. Like the defendants here, the defendants claimed that the doctor had failed to sufficiently plead the Sherman Act's jurisdictional element because the alleged conspiracy was purely a local one affecting no more than one doctor and one hospital. *Id.* at 329-30. The Supreme Court disagreed, holding that if the conspiracy was successful, then "there will be a reduction in the provision of ophthalmological services in the Los Angeles market." *Id.* at 331. Thus, the Supreme Court concluded, "[w]e have no doubt concerning the power of Congress to regulate a peer review process controlling access to the market for ophthalmological surgery in Los Angeles." *Id.* at 333. As Justice Scalia noted in dissent, the Supreme Court looked to "whether the entire line of

10-60844

commerce from which [the plaintiff] has been excluded affects interstate commerce." *Id.* at 336.[3]

Moreover, the Supreme Court has repeatedly addressed the effects on interstate commerce of hotels, motels, and other elements of the hospitality industry. In *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997), for example, the Supreme Court considered a dormant commerce clause challenge to a tax that had a disparate impact on a camp with many out-of-state campers. *Id.* at 572. The Supreme Court firmly rejected the argument that the dormant commerce clause was inapplicable, concluding that although summer camps and hotels are services that are consumed locally, they may have substantial effects on interstate commerce:

> Summer camps are comparable to hotels that offer their guests goods and services that are consumed locally. In *Heart of Atlanta Motel Inc. v. United States,* 379 U.S. 241 (1964), we recognized that interstate commerce is substantially affected by the activities of a hotel that 'solicits patronage from outside the State of Georgia through various national advertising media, including magazines of national circulation.' . . . Even when business activities are purely local, if it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze. *Id.* at 573-74. (internal quotation marks and citations omitted).

As the Supreme Court concluded, even though the camp in that case did not "make a profit, it is unquestionably engaged in commerce, not only as a

---

[3] No party here argues that *Summit Health* is no longer good law in light of *Twombly* or *Iqbal*. Indeed, at least one of our sister circuits has recently relied on *Summit Health* to conclude that a complainy sufficiently set forth an effect on interstate commerce by alleging that the plaintiff would participate in an interstate market for patients. *See Yakima Valley Mem. Hosp. v. State Dep't of Health*, --- F.3d —, Nos. 10-35497, 10-35543, 2011 WL 3629895 (9th Cir. Aug. 19, 2001).

purchaser, but also as a provider of goods and services." 520 U.S. at 573 (internal citations omitted).

To be sure, the Hotel Association's complaint here—even after prompting by the district court—is sparse. What is alleged, however, is sufficient to survive a motion to dismiss. The Supreme Court has explained that a mere "formulaic recitation of the elements" of a claim is insufficient to create a well-pleaded complaint. *Iqbal*, 129 S. Ct. at 1951. Thus, it was not enough in *Twombly* to allege a "conspiracy", 550 U.S. at 557, or in *Iqbal* to parrot the words needed to create a claim of constitutional discrimination, 129 S. Ct. at 1951. Once shorn of such legal conclusions, the allegations in those cases could not support an inference of liability—in *Twombly*, for example, the allegations of misconduct considered by the Supreme Court described a conspiracy that was factually implausible, 550 U.S. at 569, and in *Iqbal*, under the same analysis, the allegations of the complaint were consistent with an "obvious alternative explanation" for the arrests at issue. 129 S. Ct. at 1951. While the allegations in this complaint that the Golf Association's anticompetitive acts "substantially affected interstate commerce" are not sufficient on their own, the complaint here read as a whole goes beyond the allegations rejected in *Twombly* and *Iqbal*.[4]

Specifically, the complaint here alleges that voucher customers "are comprised of out-of-state persons visiting the Mississippi Gulf Coast," that the golf courses at issue are used by out-of-state visitors and that the Hotel Association vouchers are sold through hotels and motels to patrons of those

---

[4] The parties also dispute whether allegations made in briefing can supplement the allegations of a complaint. Because we find that the allegations of this complaint are sufficient to allege subject matter jurisdiction without reference to any further information provided in the briefings, we do not need to decide that question.

lodgings.  Just as in *Camps Newfound* and *Heart of Atlanta*, it is a reasonable inference from those allegations to conclude that money was sent across state lines, that tourists were attracted to the Mississippi Gulf Coast by the voucher program, and that if the alleged conspiracy were successful, consumers would not have the option of the Hotel Association's voucher program.   If it is true that these hotels and golf courses attract out-of-state visitors who participate in the Hotel Association's voucher program, as the complaint alleges, then there can be no doubt under both the Supreme Court's and this court's jurisprudence that the Hotel Association's complaint states a claim with respect to subject matter jurisdiction.  *See Iqbal*, 129 S. Ct. at 1950 ("determining  whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Camps Newfound*, 520 U.S. at 573 (observing that a business which "necessarily generates the transportation of persons across state lines that has long been recognized as a form of commerce."); *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 66-67 (2d Cir. 1997) (finding subject matter jurisdiction where college fraternities alleged that a college's efforts to monopolize campus dining services affected interstate commerce, because the college's residential services are regularly performed for out-of-state students).   O u r circuit's precedents also support this result.  In *Cowan*, the complaint concerned a wrecker service involving two interstate highways carrying substantial vehicular travel traffic in interstate travel.  814 F.2d at 224.  Although the district court had concluded that the provision of wrecker service to traffic on those roads did not bear a sufficient relationship to interstate commerce, this court held that "[a]ctions directly related to the competitive pricing, marketing and furnishing of towing service to the interstate vehicular movement of people

and goods . . . substantially affect interstate commerce." *Id.* at 226. It is no answer to say, as do defendants, that *Cowan* can be differentiated because it involved vehicular transport. As *Camps Newfound* and *Heart of Atlanta* teach, lodgings that attract out-of-state visitors substantially affect interstate commerce just as much as the highway system that takes visitors from one state to another. In *St. Bernard General Hospital, Inc. v. Hospital Service Assoc'n of New Orleans, Inc.*, 712 F.2d 978, (5th Cir. 1983), moreover, this court held that economic damages that affected a plaintiff's ability to purchase supplies were sufficient to support antitrust jurisdiction. *Id.* at 984. In that case, we explained that even "an indirect impact upon interstate commerce is not to be tolerated." *Id.* Here, as the complaint states, guests come from out-of-state to play golf at the courses in question. If the allegations of the complaint are true—as we must assume at this stage—then the possible affect on interstate commerce under the precedent in this circuit is evident. As this court firmly held in *Cowan*, it cannot "be gainsaid that travel to and through" a state "involves interstate commerce." *Cowan*, 814 F.2d at 226.

The other cases on which the defendants rely are inapposite. In *Furlong v. Long Island College Hospital*, 710 F.2d 922 (2d Cir. 1983), a doctor complained that her employer had restrained trade by improperly limiting her right to practice medicine by fixing prices for medical care. The Second Circuit held that it was not enough to show that "some aspects of a defendant's business have a relationship to interstate commerce." *Id.* at 926. Rather, "the inquiry must be whether the defendant's activity that has been allegedly infected by unlawful conduct can be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." *Id.* Concluding that the pleaded facts were insufficient because the complaint included "no allegation

of price-fixing" in any of its "operative language," and because the plaintiff had failed to show a substantial affect on interstate commerce of her own lost revenue, the court dismissed the case with leave to replead in order to set forth the jurisdictional facts at issue with more clarity. *Id.* at 927-28. Even assuming that *Furlong's* reasoning has survived *Summit Health*—which Justice Scalia's dissent in *Summit Health* puts in question, 500 U.S. at 335—the allegations of this complaint implicate interstate commerce far more directly than the attenuated allegations of the *Furlong* complaint. After all, the issue here turns on the competition for out-of-state tourism dollars between two voucher consortiums, not whether some employment dispute might lead to a marginal decrease in a defendant hospital's out-of-state purchasing. The Golf Association's reliance on a Sixth Circuit case decided at the summary judgment stage, *Stone v. William Beaumont Hospital*, 782 F.2d 609 (6th Cir. 1986) is similarly misplaced. There, the plaintiff's entire allegation was that he was excluded from working at a local medical facility "two or three times a month." *Id.* at 614. Upon review of "voluminous" pleadings, the court held that such deprivations only had a "de minimus" impact on interstate commerce. *Id.*[5] At

---

[5] *Huelsman v. Civic Center Corp.*, 873 F.2d 1171 (8th Cir. 1989), another case decided before *Summit Health*, is also not persuasive. There, the plaintiffs alleged that their sales of concessions outside a stadium to potentially out-of-state fans was sufficient to support subject matter jurisdiction. *Id.* at 1173. That court, in dismissing without prejudice, agreed with defendants that "the volume of these purchases and sales was so small that as a matter of practical economics, there was no substantial effect on interstate commerce." *Id.* at 1175. The facts here, involving fifteen golf courses and a variety of hotels and motels, are quite different. Indeed, the defendants do not even contend that the Hotel Association's activities had an insubstantial effect on interstate commerce—only that those allegations should have been better pleaded.

10-60844

this stage, we cannot say that the Hotel Association's allegations are of such insignificance.[6]

## III.

Because we find that the district court erred in dismissing the Hotel Association's case for lack of subject matter jurisdiction, we REVERSE and REMAND for further proceedings consistent with this opinion.

---

[6] Because we reverse on the basis of the District Court's decision with respect to subject matter jurisdiction, we are not required to—and do not—reach the parties' arguments with respect to the other elements of a Sherman Act claim.

14