**Opinion issued July 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00610-CV

————————————

**TIC PHILLY LANSDALE 2, LLC, TIC PHILLY LANSDALE 3, LLC, TIC PHILLY LANSDALE 4, LLC, TIC PHILLY LANSDALE 5, LLC, TIC PHILLY LANSDALE 6, LLC, TIC PHILLY LANSDALE 7, LLC, TIC PHILLY LANSDALE 8, LLC, TIC PHILLY LANSDALE 9, LLC, TIC PHILLY LANSDALE 10, LLC, TIC PHILLY LANSDALE 11, LLC, TIC PHILLY LANSDALE 13, LLC, TIC PHILLY LANSDALE 14, LLC, TIC PHILLY LANSDALE 16, LLC, TIC PHILLY LANSDALE 18, LLC, TIC PHILLY LANSDALE 19, LLC, TIC PHILLY LANSDALE 20, LLC, TIC PHILLY LANSDALE 21, LLC, TIC PHILLY LANSDALE 23, LLC, TIC PHILLY LANSDALE 24, LLC, TIC PHILLY LANSDALE 25, LLC, TIC PHILLY LANSDALE 27, LLC, TIC PHILLY LANSDALE 29, LLC, TIC PHILLY LANSDALE 30, LLC, TIC PHILLY LANSDALE 31, LLC, TIC PHILLY LANSDALE 32, LLC, TIC PHILLY LANSDALE 33, LLC, AND WAYNE MAR D/B/A TIC PHILLY LANSDALE H, Appellants**

**V.**

**BRETT C. MOODY, MOODY NATIONAL HOSPITALITY PHILLY LANSDALE V, LLC, MOODY NATIONAL PHILLY LANSDALE S, LLC, AND MOODY NATIONAL PHILLY LANSDALE H, LLC, Appellees**

**MEMORANDUM OPINION**

Appellants, TIC Philly Lansdale 2, LLC, TIC Philly Lansdale 3, LLC, TIC Philly Lansdale 4, LLC, TIC Philly Lansdale 5, LLC, TIC Philly Lansdale 6, LLC, TIC Philly Lansdale 7, LLC, TIC Philly Lansdale 8, LLC, TIC Philly Lansdale 9, LLC, TIC Philly Lansdale 10, LLC, TIC Philly Lansdale 11, LLC, TIC Philly Lansdale 13, LLC, TIC Philly Lansdale 14, LLC, TIC Philly Lansdale 16, LLC, TIC Philly Lansdale 18, LLC, TIC Philly Lansdale 19, LLC, TIC Philly Lansdale 20, LLC, TIC Philly Lansdale 21, LLC, TIC Philly Lansdale 23, LLC, TIC Philly Lansdale 24, LLC, TIC Philly Lansdale 25, LLC, TIC Philly Lansdale 27, LLC, TIC Philly Lansdale 29, LLC, TIC Philly Lansdale 30, LLC, TIC Philly Lansdale 31, LLC, TIC Philly Lansdale 32, LLC, TIC Philly Lansdale 33, LLC, and Wayne Mar, doing business as TIC Philly Lansdale H (collectively, the "investors"), challenge the trial court's final order dismissing their petition seeking to vacate, correct, and modify an arbitration award entered in their arbitration proceeding against appellees, Brett C. Moody ("Moody") and Moody National Hospitality Philly Lansdale V, LLC, Moody National Philly Lansdale S, LLC, and Moody National Philly Lansdale

2

H, LLC (collectively, the "entity appellees"). In five issues, the investors contend that the trial court erred in granting the motions to dismiss of Moody and the entity appellees.[1]

We affirm.

## Background

Moody National Hospitality Philly Lansdale V, LLC operated a Homewood Suites hotel on real property that it rented under a master lease in Lansdale, Pennsylvania (the "property"). The property's owners, which included the investors, were parties to a tenants-in-common investment agreement, which was subject to the master lease.

The master lease, among other things, contained a provision entitled "Binding Arbitration, which provided:

> Any controversy between the parties hereto arising out of or related to this [master lease] or the breach thereof or an investment in the tenant in common interests in the [property] shall be settled by arbitration in Harris County, Texas, unless otherwise agreed to by the parties thereto, in accordance with the rules of The American Arbitration Association, and judgment entered upon the award rendered may be enforced by appropriate judicial action. . . .  The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorneys' fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by the losing party or the prevailing party or such costs shall be allocated by the arbitrator. . . .

---

[1]     *See* TEX. R. CIV. P. 91a.

*Arbitration proceeding*

In September 2017, the investors filed an arbitration proceeding against Moody and other entities or purported entities (collectively, "respondents"). The investors alleged that under the master lease, respondents were "obligated to pay [the investors] a monthly base rent and additional rent," an obligation that, according to the investors, "was free of any defenses to non-payment." (Emphasis omitted.)

The investors brought claims against the respondents for breach of contract, alter ego liability, fraud in a real estate transaction, fraud in the inducement, conversion, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment. And they alleged that the respondents' conduct caused them collective damages of $9,632,260.00, "exclusive of penalties and interest."

Ultimately, the arbitrator found that only three respondents—the entity appellees—were signatories to the arbitration agreement, and it dismissed the remaining respondents from the arbitration for lack of jurisdiction.

The arbitration hearing took place from March 23, 2021, through March 26, 2021. In the arbitration award, the arbitrator found that each investor, in addition to being a party to an assignment of leases and rents, was a party to a mortgage that "covered not just the physical property" but also the investors' "interest and ownership in all rent payments, proceeds, and awards from the [p]roperty." The investors had "assigned all rents to the [l]ender" in the mortgage. And the lender

had foreclosed on the collateral, "which included any current or future unpaid [rent]." The arbitrator concluded that because the foreclosure had extinguished "any right, title, or interest" that the investors had in the rent, they were not entitled to recover on their claim for breach of contract based on the entity appellees' failure to pay them rent.

The arbitrator found that the investors were entitled to recover $193,296.00 from the entity appellees for the entity appellees' breach of the terms of the master lease that required them to hold reserves for payment of taxes, insurance, and improvements. The arbitrator also found that the investors were entitled to recover $40,000.00 from the entity appellees for their "misappropriat[ion], or fail[ure] to transfer," funds for a franchise transfer fee that they had agreed to pay. The arbitrator rejected the investors' remaining claims.

Based on those findings, the arbitrator awarded the investors total damages of $233,296.00, $44,715.22 in pre-award interest, and $75,000.00 in attorney's fees and costs.

### Trial court proceeding

In their amended petition to vacate, correct, or modify the arbitrator's award, the investors requested that the trial court vacate the arbitrator's decision denying them recovery for their breach-of-contract claim against the entity appellees for failure to pay past due rent and additional rent under the master lease. The investors

5

also requested that the trial court "[v]acate or [m]odify the [a]rbitrator's decision dismissing" certain appellees for lack of jurisdiction and modify the award in other respects. The investors attached to their petition all the documents filed in the arbitration, as well as transcripts from the arbitration hearing.

Moody and the entity appellees filed motions to dismiss the investors' claim for vacatur of the arbitration award.[2] In his motion, Moody asserted that as a non-signatory to the arbitration agreement and a non-participant in the arbitration proceeding, there was no legal basis for a cause of action for vacatur or modification of an arbitration award against him. In their motion, the entity appellees argued that the investors' amended petition requesting vacatur had no basis in law or fact because the investors "d[id] not allege corruption of any sort and d[id] not plead facts constituting 'evident partiality'" as required to state a viable claim under the Federal Arbitration Act ("FAA").[3] The entity appellees also maintained that the investors' assertion that the arbitrator had exceeded his powers was merely a complaint about the merits of the arbitrator's decision and thus was not a basis for vacatur under the FAA. And the entity appellees asserted that the investors had "waived their right to seek a judicial remedy on multiple issues raised in their [p]etition by declining to raise those issues in the arbitration itself."

---

[2] *See id.*

[3] *See* 9 U.S.C. § 10(a)(2).

6

In response to Moody's and the entity appellees' motions to dismiss, the investors argued that because the entity appellees did not timely file their motions, they "should be denied."

The trial court signed orders granting the motions to dismiss of Moody and the entity appellees. Later, the trial court signed a final judgment in which it denied the investors' request to modify and correct the arbitration award.

## Standard of Review

Texas Rule of Civil Procedure 91a allows a party to move for early dismissal of a cause of action against it. *See* TEX. R. CIV. P. 91a; *Ball v. City of Pearland*, No. 01-20-00039-CV, 2021 WL 4202179, at \*2 (Tex. App.—Houston [1st Dist.] Sept. 16, 2021, no pet.) (mem. op.). A trial court may dismiss a cause of action under rule 91a if "it has no basis in law or fact." TEX. R. CIV. P. 91a.1; *Ball*, 2021 WL 4202179, at \*2. Relevant here, "[a] cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant[s] to the relief sought." TEX. R. CIV. P. 91a.1; *see also Ball*, 2021 WL 4202179, at \*2. We review a trial court's decision on a rule 91a motion to dismiss de novo. *See Bethel v. Quilling, Selander, Lownds, Winslett & Mose, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020); *Malik v. GEICO Advantage Ins. Co.*, No. 01-19-00489-CV, 2021 WL 1414275, at \*4 (Tex. App.—Houston [1st Dist.] Apr. 15, 2021, pet. denied) (mem. op.).

We also apply the de novo standard to review a trial court's decision to vacate or confirm an arbitration award. *Port Arthur Steam Energy LP v. Oxbow Calcining LLC*, 416 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). At the same time, review of an arbitration award is "extraordinarily narrow." *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010); *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). An arbitration award is presumed valid and is entitled to great deference. *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Judicial scrutiny of an award focuses on the integrity of the arbitration process, not the propriety of the result. *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.). An arbitration award has the same effect as a judgment of a court of last resort, and a reviewing court may not substitute its judgment for that of the arbitrator merely because it would have reached a different result. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238–39 (Tex. 2002); *see also Universal Computer Sys., Inc. v. Dealer Sols., L.L.C.*, 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (review is limited such that trial court may not vacate arbitration award even if it is based on mistake of fact or law).

## Applicable Law

In their first issue and a portion of their second issue, the investors argue that the trial court erred in applying the FAA to review their amended petition to vacate,

8

correct, or modify the arbitrator's award because under the master lease "the agreed upon governing law [was] the law of" Pennsylvania.[4]

To support their assertion that the trial court should have applied Pennsylvania common law, the investors rely on the master lease's separate choice-of-law provision, set forth in the "General Provisions," which stated: "Except as otherwise provided herein, this [master lease] shall be governed by and construed under the internal laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles." But a "generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default standards." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 342 (5th Cir. 2004). The Texas Supreme Court, in holding that an agreement containing a general choice-of-law provision stating that the entire contract would be governed by "the law of the place where the Project [wa]s located," did not preclude application of the FAA, specifically rejected the same argument that the investors have made here. *See In re L&L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–28 (Tex. 1999). "[A] choice-of-law clause that does not specifically exclude application of federal law will not preclude application of the FAA." *Dewey v. Wegner*, 138 S.W.3d 591, 596 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

---

[4]    The FAA and the TAA specify similar grounds for vacating, modifying, or correcting an arbitration award. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 91 (Tex. 2011).

9

Further, we note that "[t]he FAA applies to . . . transactions involving [interstate] commerce[.]" *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97 n.64 (Tex. 2011); *see also* 9 U.S.C. § 2; *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). And Moody and the entity appellees have established, and the investors do not dispute, that the hotel business involves interstate commerce. *See, e.g.*, *Heart of Atlanta Motel Inc. v. United States*, 379 U.S. 241, 258 (1964); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 504-06 (5th Cir. 2011).

For these reasons, we hold that the trial court did not err by applying the FAA instead of the Pennsylvania common law to determine whether the investors' allegations in their amended petition showed that they were entitled to vacatur of the arbitration award.

We overrule appellant's first issue and a portion of their second issue.

**Timeliness of Rule 91a motions**

In the remaining portion of their second issue, the investors argue that the trial court erred in granting the rule 91a motions to dismiss of Moody and the entity appellees on the merits because the motions were untimely and procedurally deficient. As to the alleged procedural deficiencies, the investors assert that Moody and the entity appellees (1) untimely filed their rule 91a motions to dismiss and (2) improperly attached evidence outside of the pleadings to their motions.

10

A motion to dismiss under Texas Rule of Civil Procedure 91a "must be . . . filed within 60 days after the first pleading containing the challenged cause of action is served on the movant." TEX. R. CIV. P. 91a.3(a). According to the investors, they served the entity appellees with their original petition to vacate, correct, or modify the arbitrator's award on September 21, 2021, which was more than sixty days before Moody and the entity appellees filed their motions to dismiss.

But the record does not reflect proper service. For service to be valid, "strict compliance with the rules of civil procedure relating to the issuance, service, and return of citation" is required. *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985). A trial court does not have personal jurisdiction over a defendant unless the defendant was properly served. *See Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020); *Pro-Fire & Sprinkler, L.L.C. v. Law Co.*, 637 S.W.3d 843, 849 (Tex. App. —Dallas 2021, no pet.).

The party requesting service is responsible for ensuring that service is properly accomplished and reflected in the record. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994); *Pro-Fire & Sprinkler*, 637 S.W.3d at 850. "[F]ailure to affirmatively show strict compliance with the [Texas] Rules of Civil Procedure renders the attempted service of process invalid and of no effect." *Uvalde Country Club*, 690 S.W.2d at 885.

Strict compliance is determined by whether the exact procedural requirements for service have been satisfied, not whether the intended party received notice of the lawsuit. *Union Pac. Corp. v. Legg*, 49 S.W.3d 72, 78 (Tex. App.—Austin 2001, no pet.); *see also In re Z.J.W.*, 185 S.W.3d 905, 908 (Tex. App.—Tyler 2006, no pet.) (strict compliance means literal compliance with service rules). Even minor discrepancies between the citation and return as to the address or name of a defendant or its registered agent can render service invalid. *See Spanton*, 612 S.W.3d at 317; *Uvalde Country Club*, 690 S.W.2d at 885.

The investors do not assert, and the record does not show, that Moody, individually, was ever served with citation. As to the entity appellees, the citations show that service was purportedly effected "by serving sole member Brett C Moody." According to the investors, their service on the entity appellees through Moody was authorized by Texas Business Organizations Code section 5.255, which designates as an agent for service of process "each manager of a manager-managed domestic or foreign limited liability company and each member of a member-managed domestic or foreign limited liability company." *See* TEX. BUS. ORGS. CODE ANN. § 5.255(3). But the corporate documents for the entity appellees, which are among the arbitration proceeding records filed with the investors' petitions, do not identify Moody as the "sole member" or "manager" of any entity

12

appellee. The record thus does not affirmatively show that the entity appellees were properly served through an authorized agent.

Because the record does not show that the investors' original petition was properly served on Moody or the entity appellees, the sixty-day period for filing their Rule 91a motions did not commence on September 21, 2021. *See* TEX. R. CIV. P. 91a.3(a) (motion must be filed "within 60 days after the first pleading containing the challenged cause of action is served on the movant"). Accordingly, the Rule 91a motions were not untimely filed.

The investors also argue that the motions to dismiss of Moody and the entity appellees did not comply with Texas Rule of Civil Procedure 91a because they attached evidence outside of the pleadings, namely, a series of emails between the parties' counsel showing that they had reached an agreement that the entity appellees' counsel would accept service on their behalf "effective as of November 15, 2021."[5]

Moody and the entity appellees filed copies of the emails in the trial court after the investors contested the timeliness of their Rule 91a motions to dismiss. The emails did not involve any of the grounds for dismissal identified in Rule 91a. *See*

---

[5] The investors disagree with Moody and the entity appellees about the effect of the agreement documented in the emails. Because the record otherwise shows that the Rule 91 motions were not untimely, we do not reach the issue of whether the emails constituted a valid Rule 11 agreement. *See* TEX. R. CIV. P. 11.

13

TEX. R. CIV. P. 91a.1 (defendant may move for dismissal of plaintiff's cause of action on grounds that it has no basis in law or fact); *see also id.* 91a.6 (court must decide motion "based solely on the pleading of the cause of action, together with any pleading exhibits permitted by [Texas] Rule [of Civil Procedure] 59"); *id.* 91a.7 (requiring evidence to support any award of costs or attorney's fees). In any event, as discussed above, the trial court could have determined that the Rule 91a motions were not untimely without consideration of the emails. As a result, the investors have not shown that the attachment of the emails to Moody's and the entity appellees' motions to dismiss "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a).

We conclude that the investors have failed to show that the Rule 91a motions to dismiss filed by Moody and the entity appellees were either untimely or that the trial court reversibly erred in relying on evidence outside of the pleadings in granting the motions. Thus, we hold that the trial court did not err in ruling on the merits of the motions to dismiss.

We overrule the remaining portion of appellant's second issue.

**Challenges to Arbitration Award**

In their third, fourth, and fifth issues, the investors argue that the trial court erred in granting the Rule 91a motions to dismiss of Moody and the entity appellees because the arbitrator exceeded the scope of his authority in dismissing certain

14

respondents, in rejecting their breach-of-contract claim based on the failure to pay rent to the investors, and in segregating their attorney's-fee claim to award only the portion of attorney's fees attributable to the claims on which they prevailed.

A trial court may vacate an arbitration award under the FAA based solely on the grounds expressly identified in FAA section 10. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008); *see* 9 U.S.C. § 10(a)(4) (authorizing court to vacate arbitration award if arbitrator exceeded his powers); TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A) (same). We consider each issue in turn.

## A. Arbitrator's Dismissal of Certain Respondents

In their third issue, the investors assert that the arbitrator "exceed[ed] his authority during the arbitration proceeding[] by dismissing [certain] respondents []for lack of jurisdiction." Specifically, the investors complain that the arbitrator did not explain his reasoning for dismissing those respondents.

The investors' complaint in their third issue is belied by the arbitration award, which states that the "[e]ntities and individuals previously listed as [r]espondents were dismissed for the reasons provided in the briefing and orders that led to their dismissal due to the [a]rbitrator's lack of jurisdiction over those parties." Further, longstanding precedent holds that "[a]rbitrators have no obligation to the court to give their reasons for an award." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)); *see also Antwine v. Prudential Bache Secs., Inc.*,

15

899 F.2d 410, 412 (5th Cir.1990) ("It has long been settled that arbitrators are not required to disclose or explain the reasons underlying an award."). Thus, we hold that the trial court did not err in concluding that the investors' complaint, as asserted in their third issue, failed to demonstrate a basis for vacatur of the arbitration award.

We overrule the investors' third issue.

## B. Breach-of-Contract Claim for Rent

In their fourth issue, the investors argue that the trial court erred in granting the Rule 91a motions to dismiss of Moody and the entity appellees because the arbitrator "exceed[ed] the scope of his authority" in rejecting the investors' breach-of-contract claim based on Moody's and the entity appellees' alleged failure to pay past due rent and additional rent. The investors complain that the arbitrator's decision was "not decided by the terms of the contract or Pennsylvania [l]aw, covered unidentified [a]greements (i.e., [m]ortgages and [a]ssignments) outside of the terms" of the master lease and tenants-in-common agreement, "and only benefited third-party lenders who chose not to be a party to the [a]rbitration."

The investors fail to cite any authority to support their assertion that the arbitrator's consideration of documents admitted in the arbitration proceeding, including mortgages and assignments of rents as well as documentation of the

16

foreclosure, provides a basis for vacating the arbitration award.[6] Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error). The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). We hold that the investors have waived their complaints contained in their fourth issue due to inadequate briefing.

## C.    Attorney's-Fee Award

In their fifth issue, the investors argue that the trial court erred in granting the Rule 91a motions to dismiss of Moody and the entity appellees because the arbitrator

---

[6]    We note that the master lease incorporates the mortgage by reference in requiring the master tenant "to pay directly" to the mortgagor that portion of rent received "that equals the sum of the regularly scheduled installments of principal and interest, and all reserves and impounds, required under the terms of the loan."

17

"exceed[ed] the scope of his authority with regard to the arbitrator's award as to attorneys' fees and court costs to the investors as prevailing parties to the arbitration award" under the master lease's arbitration provision.

On the issue of attorney's fees, the arbitration provision of the master lease provides, in pertinent part, that the "losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorneys' fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by the losing party or the prevailing party or such costs shall be allocated by the arbitrator." The investors prevailed on only some of the claims that they pursued in the arbitration. In the award, the arbitrator noted that he awarded the investors their attorney's fees only for the claims on which they prevailed.

The investors assert that the attorney's-fee provision in the master lease did not permit the arbitrator to segregate the attorney's fees they incurred in prosecuting their unsuccessful claims from the fees they incurred in prosecuting their successful claims in determining the amount of attorney's fees to award. But the attorney's-fee provision is not, on its face, inconsistent with the arbitrator's interpretation, and the investors do not provide any analysis or cite to any legal authority to support their interpretation of the attorney's-fee provision or explain why they believe that the arbitrator's interpretation is unreasonable. As a result, we conclude that the investors have also waived their complaints in their fifth issue due to inadequate briefing. *See*

18

TEX. R. APP. P. 38.1(i); *Marin Real Estate Partners*, 373 S.W.3d at 75; *Huey*, 200

S.W.3d at 854.

## Conclusion

We affirm the order of the trial court.


Julie Countiss
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.